# United States Tax Court

T.C. Memo. 2022-48

CHRISTIAN RENEE EVERT,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 12901-19.                                   Filed May 9, 2022.

————————

*Robert G. Nassau* and Meredith Wallen (student), for petitioner.

*Frederick C. Mutter* and *Mimi M. Wong*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

MARSHALL, *Judge*: Respondent determined the following tax deficiencies and accuracy-related penalties in the statutory notice of deficiency (notice of deficiency) issued to petitioner on April 17, 2019:[1]

| Year | Deficiency | Accuracy-related penalty § 6662(a) |
|------|-----------|-----------------------------------|
| 2015 | $9,615 | $1,923 |
| 2016 | 9,895 | 1,979 |

After concessions, the sole issue remaining for decision is whether the period of limitations for assessment of tax for tax year 2015 expired

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times. All monetary amounts are rounded to the nearest dollar.

[*2] before the mailing of the notice of deficiency.[2]  Respondent argues that he obtained a valid consent to extend the statutory period of limitations for assessment for tax year 2015; petitioner alleges that she signed the consent under duress, rendering it invalid.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  Petitioner lived in New York when she timely filed her petition.  She holds a college degree and is a licensed nurse in New York.

Petitioner timely filed Forms 1040, U.S. Individual Income Tax Return, for tax years 2015 and 2016.  Those returns were selected for audit.  After the appropriate Internal Revenue Service (IRS) operating division (IRS Exam) completed the examination of those returns, petitioner sought to challenge the proposed adjustments determined by IRS Exam with the IRS Office of Appeals (IRS Appeals).[3]

On April 23, 2018, petitioner's IRS Appeals case was assigned to Appeals Officer Gary Mack (AO Mack).  AO Mack served in the U.S. Navy for six years and in the U.S. Navy Reserve for another 20 years, retiring as a captain in 2008.  After leaving active duty, AO Mack earned a law degree and subsequently worked at the Office of Hearings and Appeals within the Social Security Administration for 12 years.  AO Mack also worked as an attorney in private practice and later joined the Federal Bureau of Investigation.  In June 2010 AO Mack joined the IRS as an IRS Appeals Officer and eventually was promoted to policy analyst.

On April 23, 2018, AO Mack mailed petitioner Letter 5157, Non-docketed Acknowledgement & Conference, and requested that she call him by May 5, 2018.  After AO Mack did not hear from petitioner, he attempted to reach her by phone on May 10, 2018.  On May 21, 2018,

---

[2] The parties filed a joint stipulation of settled issues on October 28, 2020. Subject to the question of whether the period of limitations for assessment of tax for tax year 2015 expired before the mailing of the notice of deficiency, petitioner conceded that all of the adjustments set forth in the notice of deficiency are correct.  Respondent conceded that petitioner is not liable for any penalties.

[3] On July 1, 2019, IRS Appeals was renamed the "Internal Revenue Service Independent Office of Appeals."  *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001(a), (c), 133 Stat. 981, 983, 985 (2019).  As the events in this case predate that change, we use the name in effect at the times relevant to this case, i.e., the IRS Office of Appeals.

[*3] AO Mack reached petitioner and scheduled a telephone conference for June 4, 2018. Petitioner later requested that the IRS Appeals conference be rescheduled to June 11, 2018, and AO Mack agreed.

During the June 11, 2018, conference, AO Mack told petitioner that he needed additional information in order to consider her positions. AO Mack agreed to leave the file open so that petitioner had time to gather the additional information to support her arguments and did not give petitioner a firm deadline. On July 9, 2018, petitioner contacted AO Mack by phone, telling him that she had gathered some additional information and would get more information later that week. Petitioner did not send any additional information in July 2018.

In early August 2018 AO Mack prepared two reports that were due to his manager at the beginning of each month: a list of his oldest cases and a list and status summary of his cases where the period of limitations for assessment would expire in the subsequent nine months (period expiration report). AO Mack's August 2018 period expiration report included petitioner's case because he calculated that the period of limitations for assessment of tax for tax year 2015 would expire within nine months. AO Mack was required to report his actions taken to protect the period of limitations for each case. After evaluating the status of petitioner's case, AO Mack decided to seek her consent to extend the period of limitations because he had not received any information from petitioner since her followup call on July 9, 2018.

On August 2, 2018, AO Mack mailed to petitioner: (1) Letter 967 (Rev. 12-2016), Consent Extending Period of Limitation Transmittal, (2) Form 872 (Rev. 7-2014), Consent to Extend the Time to Assess Tax, for tax year 2015, and (3) IRS Publication 1035 (Rev. 9-2017), Extending the Tax Assessment Period. The Letter 967 included the following statement: "The law limits the amount of time we can assess additional tax on your federal return. This limitation period will expire before Appeals can complete the consideration of your case. Therefore, we request that you agree to extend the period." The Form 872 mailed to petitioner included the following statement, titled "Your Rights as a Taxpayer":

> You have the right to refuse to extend the period of limitations or limit this extension to a mutually agreed-upon issue(s) or mutually agreed-upon period of time. ***Publication 1035, Extending the Tax Assessment Period***, provides a more detailed explanation of your

**[*4]**   rights and the consequences of the choices you may make. If you have not already received a Publication 1035, the publication can be obtained, free of charge, from the IRS official who requested that you sign this consent or from the IRS' web site at  www.irs.gov  or by calling toll free at 1-800-TAX-FORM (1-800-829-3676).  Signing this consent will not deprive you of any appeal rights to which you would otherwise be entitled.

The Publication 1035 mailed to petitioner was a four-page document explaining: (1) the statute of limitations for assessment of tax; (2) why the Commissioner may request that a taxpayer consent to extend the period of limitations for assessment; (3) the taxpayer's options and rights when the Commissioner requests such a consent; and (4) what actions the Commissioner may take in response to the taxpayer's choices.  Publication 1035 explained that the Commissioner will request an extension of the period of limitations if it will soon expire because "additional time allows [the taxpayer] to provide further documentation to support [his or her] position [or] request an appeal if [he or she does] not agree with the examiner's findings."  Publication 1035 further explained that a taxpayer has three options when the Commissioner requests a consent: (1) sign an unconditional consent; (2) negotiate consent terms; or (3) refuse to sign the consent.  Publication 1035 included a detailed explanation of what happens if a taxpayer refuses to sign the consent, including the following:

> If [the taxpayer] choose[s] not to sign the consent, [the Commissioner] will take steps that will allow [the Commissioner] to assess any tax [the Commissioner] determine[s] to be due.  These steps begin with the issuance of a formal notice [of deficiency] . . . [that] neither requires that [the taxpayer] make an immediate payment, nor that [the taxpayer] immediately take [his or her] case to the Tax Court.

Petitioner received the Letter 967, Form 872, and Publication 1035 that AO Mack mailed.  On August 12, 2018, petitioner signed and returned the Form 872, agreeing to extend the period of limitations for assessment of tax for tax year 2015 to April 15, 2020. AO Mack received the signed Form 872 and, on August 16, 2018, signed the Form 872 on behalf of the IRS.

**[\*5]**   After the Form 872 was signed, AO Mack continued to provide petitioner with the opportunity to present her positions and supporting documents in IRS Appeals for several months. Ultimately, respondent mailed the notice of deficiency for tax years 2015 and 2016 on April 17, 2019.

Petitioner timely petitioned this Court to challenge the determinations in the notice of deficiency. After the case was docketed, petitioner moved to amend her Petition to argue that she had signed the Form 872 under duress, that the Form 872 is accordingly invalid, and that respondent failed to timely mail the notice of deficiency before the period of limitations for assessment of tax for tax year 2015 expired. The Court granted petitioner's Motion.

OPINION

The period of limitations for the Commissioner to assess federal tax is generally three years after the taxpayer files a return for a year. § 6501(a). This three-year period begins on the due date of the return if it is timely filed or on the actual filing date if the return is filed late. *See* § 6501(a) and (b)(1). The period of limitations for assessment can be extended beyond three years, provided the Commissioner and the taxpayer consent in writing before the period of limitations expires. § 6501(c)(4). In the case of a consent under section 6501(c)(4), the Commissioner may assess federal tax up until the date agreed upon, which can be extended further. *See* Treas. Reg. § 301.6501(c)-1(d).

"[T]he statute of limitations is a defense in bar and not a plea to the jurisdiction of this Court." *Badger Materials, Inc. v. Commissioner*, 40 T.C. 1061, 1063 (1963), *supplementing* 40 T.C. 725 (1963). To establish this defense, a taxpayer must make a prima facie case, which ordinarily requires proof of the date of the return and expiration of the statutory period of limitations. *Robinson v. Commissioner*, 57 T.C. 735, 737 (1972). When the taxpayer makes a prima facie case by alleging that assessment is barred by the statute of limitations and proving the filing date of the return, the Commissioner must go forward with countervailing evidence pointing to the fact that for some reason the statutory period of limitations had not expired when the notice of deficiency was issued. *Id.* "Thus, if the [taxpayers] plead and prove that they have not received a notice of deficiency before the running of the period of limitations, it is clear that they have met their burden of proof and that the [Commissioner] must then show that the running of the period was in some way suspended." *Id.* (citing *Rogers v. Commissioner*,

**[*6]** 57 T.C. 711 (1972)). The Commissioner's burden of going forward with proof may be discharged by the introduction of a consent, valid on its face, which extended the period of limitations such that the mailing of the notice of deficiency was timely. *Mecom v. Commissioner*, 101 T.C. 374, 382–83 (1993), *aff'd without published opinion*, 40 F.3d 385 (5th Cir. 1994); *Concrete Eng'g Co. v. Commissioner*, 19 B.T.A. 212, 221–22 (1930), *aff'd*, 58 F.2d 566 (8th Cir. 1932); *see also Jarvis v. Commissioner*, T.C. Memo. 1980-381, 1980 Tax Ct. Memo LEXIS 207, at *8.

The parties agree that petitioner timely filed her return for tax year 2015 and that the three-year limitations period provided for under section 6501(a), without extension, would have expired before the date on which respondent mailed the notice of deficiency for tax year 2015. Thus, petitioner has made the requisite prima facie showing. Respondent has introduced a Form 872 signed by petitioner on August 12, 2018, valid on its face, which extended the period of limitations through April 15, 2020. Therefore, respondent has discharged his burden of going forward. *See Ballard v. Commissioner*, T.C. Memo. 1987-471, 1987 Tax Ct. Memo LEXIS 467, at *6–7 (holding that the Commissioner met his burden of going forward when he introduced a Form 872, signed by the taxpayers on a date six months before the date the period of limitations was due to expire), *aff'd without published opinion*, 851 F.2d 359 (5th Cir. 1988).

Where the Commissioner has introduced an apparently valid consent and the taxpayer asserts that the consent was ineffective, it is then the taxpayer's burden to affirmatively show the written consent is not valid. *Mecom*, 101 T.C. at 382–83; *Concrete Eng'g Co.*, 19 B.T.A. at 221–22; *Ballard*, 1987 Tax Ct. Memo LEXIS 467, at *6–7. Therefore, petitioner bears the burden of proving her contention that she signed Form 872 under duress.

The Board of Tax Appeals defined duress in *Diescher v. Commissioner*, 18 B.T.A. 353, 358 (1929), as follows:

> In modern jurisprudence the definition of duress has been enlarged much beyond the narrow limits recognized in the common law. It is now well settled that if an act of one party deprives another of his freedom of will to do or not to do a specific act the party so coerced becomes subject to the will of the other, there is duress, and in such a situation no act of the coerced person is voluntary and

**[\*7]**    contracts made in such circumstances are void because there has been no voluntary meeting of the minds of the parties thereto.

The Board of Tax Appeals held that the taxpayer signed a waiver of the period of limitations under duress when the Commissioner threatened to impose a 100% fraud penalty should the taxpayer fail to sign the waiver. *Id.* at 357–59. In invalidating the waiver, the Board of Tax Appeals explained that the parties "were not dealing with each other at arm's length" and that the taxpayer "was not acting with a free will, but was coerced by the will of the [Commissioner]." *Id.* at 358–59.

We have also held that "actions that deprive another of her freedom of will are distinguishable from legally authorized actions that merely limit another to choose between options that are not desirable." *Hall v. Commissioner*, T.C. Memo. 2013-93, at \*12. Hence, it is not duress when the Commissioner makes statements informing a taxpayer that lawful means to assess and collect the tax will be used. *Burnet v. Chi. Ry. Equip. Co.*, 282 U.S. 295, 303 (1931); *Mulford v. Commissioner*, 25 B.T.A. 238, 242–43 (1932), *aff'd*, 66 F.2d 296 (3d Cir. 1933). Accordingly, we have held that a taxpayer did not sign a consent under duress when the Commissioner told the taxpayer that an opportunity for an IRS Appeals conference would not be allowed if the taxpayer failed to sign a consent. *Ballard*, 1987 Tax Ct. Memo LEXIS 467, at \*8 (reasoning that it was not duress for the revenue agent to inform the taxpayer that a notice of deficiency would be issued without an opportunity for administrative appeal because such statements were nothing more than notice that the Commissioner intended to use lawful means at his disposal to assess the tax); *Jarvis*, 1980 Tax Ct. Memo LEXIS 207, at \*9–10 (explaining that the Commissioner's refusal to conduct an IRS Appeals conference without the taxpayers' execution of Form 872 was a necessary step in the Commissioner's pursuit of the lawful means provided for income tax assessment because holding an IRS Appeals conference without extending the period of limitations would have caused the Commissioner to issue an untimely notice of deficiency).

We conclude that petitioner has not met her burden of showing that she signed Form 872 under duress. AO Mack's testimony, his contemporaneous case notes, and the documentary evidence in the record support respondent's assertion that AO Mack requested by mail that petitioner consent to extend the period of limitations for tax year 2015 and advised petitioner that her failure to consent would cause AO

[*8] Mack to close her IRS Appeals conference without giving her much additional time to provide documents. AO Mack's communications were statements about how respondent would act to assess and collect the tax he believed petitioner owed.

Petitioner testified that AO Mack had a conversation about the consent form with her before he mailed it to her on August 2, 2018, where he allegedly made statements about what would happen if she refused to consent to extend the period of limitations. AO Mack flatly denied that any conversation took place and testified that he "cold" mailed Form 872, along with Letter 967, and Publication 1035.[4] Faced with directly contradictory testimony, we are left to weigh the credibility of the witnesses.

We found AO Mack to be credible. He was an experienced IRS Appeals officer, and his testimony demonstrated significant competence in IRS procedures and administration. Moreover, his testimony was supported by, and made sense in the light of, other evidence in the record. His testimony was consistent with his written case notes and the documents mailed to petitioner on August 2, 2018. We find that AO Mack was not scrambling to get petitioner's consent; he had plenty of time to allow her to receive the documents in the mail, review them, and consider his request.

Apart from petitioner's testimony, there is no evidence that AO Mack had any conversation with petitioner about the consent form. Faced with AO Mack's credible testimony and the other evidence in the record, we did not find petitioner's testimony sufficient to meet her burden. Petitioner's testimony was uncorroborated and vague, lacked critical detail, and was not believable in the light of other evidence in the record.[5] For instance, petitioner could not recall the date on which

---

[4] AO Mack directly contradicted petitioner's testimony on several points, including whether they discussed the consent form before AO Mack's sending it on August 2, 2018. AO Mack's testimony and case notes also directly contradicted petitioner's testimony that she had already sent AO Mack additional documents substantiating some of her tax positions, he had agreed to accept her documents as sufficient to substantiate her positions, and he had threatened to go back on his agreements if she did not sign the consent. AO Mack testified that petitioner had not provided additional documentation before he mailed the consent forms on August 2, 2018.

[5] For example, petitioner testified: "[AO Mack] told me that I had just a few days left on the statue [sic] or he's going to close my case and assess me the tax for this

**[\*9]** she allegedly spoke to AO Mack about the period of limitations before he sent the consent documents. We find that AO Mack "cold" mailed the Letter 967, Form 872, and Publication 1035 to petitioner, and that petitioner was not under duress when she signed and mailed back the Form 872.

Petitioner cites *Diescher* and *Robertson v. Commissioner*, T.C. Memo. 1973-205, 1973 Tax Ct. Memo LEXIS 81, in support of her argument that she signed the Form 872 under duress. *Diescher* is distinguishable because we find that AO Mack never threatened to impose penalties (let alone 100% fraud penalties) if petitioner did not agree to sign the Form 872. *See Diescher*, 18 B.T.A. at 357.

In *Robertson*, we held that the taxpayers signed a consent under duress when the revenue agent "harassed" them to sign a consent with less than two weeks left before the period of limitations expired.[6] We accepted as true the taxpayers' testimony of the events leading up to the consent because the revenue agent failed to testify. Here, on the other

---

tax year. That's pretty much what he said." Petitioner's testimony is difficult to reconcile with the undisputed fact that the parties signed the consent approximately nine months before the period of limitations for assessment would have expired, not "just a few days" before. Additionally, it is difficult to conclude that AO Mack made these alleged statements because the Publication 1035 that he furnished to petitioner would have readily exposed the statements as empty threats. For instance, AO Mack's alleged statement that there were "just a few days left" on the period of limitations would conflict with Publication 1035's detail regarding how the period of limitations for assessment expires three years after the return is filed (i.e., April 2019, not August 2018). Similarly, AO Mack's alleged threat to close petitioner's case and "assess" the tax if she failed to sign the Form 872 would conflict with the explanation in Publication 1035 about how the Commissioner must first issue a notice of deficiency and give the taxpayer an opportunity to petition this Court before the Commissioner can assess and collect the tax he believes is owed.

[6] The Court explained:

We recognize that the Commissioner feels obligated to examine as many returns as possible in order to enforce the law and that is understandable. Nevertheless, when he attempts to secure a consent extending the period of limitations on assessment some three years after the return was filed and within only two weeks of the expiration of the period of limitation, from a taxpayer whose attorney prepared and signed the return and is unavailable for advice, we feel he proceeds at his own risk and, in circumstances such as these, owes more to the taxpayer than vague statements of alternatives of executing the consent or subjecting all of the taxpayer's property to seizure by the government for some unknown amount of tax.

*Robertson*, 1973 Tax Ct. Memo LEXIS 81, at \*18.

**[*10]** hand, AO Mack did testify, and we found his testimony credible. We have not accepted as true all of petitioner's testimony.

We also conclude that *Robertson* is otherwise distinguishable. In *Robertson* the taxpayers' return was still being examined by IRS Exam, so the amount of additional tax at issue was unknown by the taxpayers. *Robertson*, 1973 Tax Ct. Memo LEXIS 81, at *16–17. The revenue agent in *Robertson* requested a consent so that he could finish his examination of the taxpayers' return, not to afford the taxpayers an opportunity to present their position. After obtaining the consent, the revenue agent never afforded the taxpayers any opportunity to present their position; he instead used the extension merely to finish his own work. *Id.* at *17–18.

In contrast, IRS Exam completed its examination of petitioner's returns, and petitioner then availed herself of an IRS Appeals conference, where AO Mack was taking a fresh look at petitioner's tax positions. After petitioner signed Form 872, AO Mack gave petitioner several months to present her positions and supporting documentation before issuing the notice of deficiency. In sum, respondent did not hurriedly seek a consent in this case so that he could complete an audit as in *Robertson* but rather requested one for petitioner's own benefit— so that there was sufficient time for her to present her views and documents before IRS Appeals.

Also, there is no credible evidence that AO Mack "harassed" petitioner in any way to sign a consent to extend the period of limitations, as the revenue agent did in *Robertson*. There, the revenue agent called the taxpayers repeatedly, including at their place of work, and showed up at their residence without advance notice. In the instant case AO Mack mailed the Letter 967, Form 872, and Publication 1035 to petitioner for her to review at her convenience after he was prompted to protect the period of limitations while preparing his period expiration report.

We find that petitioner did not act under duress when she signed Form 872, extending the period of limitations for assessment of tax for tax year 2015. Therefore, we hold that the period of limitations for assessment of tax for tax year 2015 had not yet expired when respondent mailed the notice of deficiency on April 17, 2019, and assessment of federal tax for tax year 2015 is not barred. *See* § 6501(a), (c)(4).

**[\*11]**  We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent as to the deficiencies and for petitioner as to the accuracy-related penalties under section 6662(a).*